UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOC CHI DUONG,<br><br>Petitioner,<br><br>v.<br><br>WARDEN, GOLDEN STATE ANNEX<br>DETENTION FACILITY, et al.,<br><br>Respondents. | No.  1:25-cv-1771 DAD CSK P<br><br><br>FINDINGS & RECOMMENDATIONS |

## I.  INTRODUCTION

Petitioner, a native and citizen of Vietnam who was admitted to the United States on or about February 2, 1988, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  Petitioner was initially detained by immigration officials on June 15, 2022 and released under a supervision order on November 2, 2022.  On June 4, 2025, petitioner was re-detained by U.S. Immigration and Customs Enforcement ("ICE").  This habeas action concerns petitioner's re-detention.  For the following reasons, this Court recommends that the habeas petition be granted.

///

///

_____

[1] Petitioner paid the filing fee.  Petitioner is proceeding with appointed counsel in this action. (ECF No. 11; Docket.)

1

## II.  FACTUAL BACKGROUND

Petitioner is a native and citizen of Vietnam who was admitted to the United States on or about February 2, 1988 as a Lawful Permanent Resident.  (ECF No. 9-1 at 2, Declaration of Deportation Officer Armando Menses; ECF No. 9-2 at 2.)   On or about July 7, 1999, petitioner was convicted in Santa Clara County Superior Court of the following: (1) two counts of violating California Penal Code Section 264.1 (penetration by foreign object in concert), for which he was sentenced to seven years imprisonment for each count (ECF No. 9-1 at 3; ECF No 9-2 at 7-23); (2) one count of California Penal Code Section 220 (assault within intent to commit oral copulation), for which he was sentenced 16 months imprisonment (ECF No. 9-1 at 3; ECF No. 9-2 at 7-23); and (3) eight counts of violating California Penal Code Section 213(a)(1)(A) (first degree robbery), for which he was sentenced to 17 years imprisonment (ECF No. 9-1 at 3; ECF No. 9-2 at 7-23).  Petitioner is a registered sex offender.  (ECF No. 9-1 at 3; ECF No. 9-2 at 7-23.)

On or about June 15, 2022, a Form I-862, Notice to Appear, was issued charging petitioner with removability pursuant to section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(A)(iii), based on petitioner's conviction of an aggravated felony after his admission.  (ECF No. 9-1 at 2; ECF No. 9-2 at 2-5.)

On or about June 15, 2022, petitioner was taken into Department of Homeland and Security ("DHS") custody and housed at the Golden State Annex in McFarland, California.  (Id.) Petitioner's convictions rendered petitioner subject to mandatory detention under INA section 236(c), 8 U.S.C. § 1226(c).  (ECF No. 9-1 at 2.)

On August 4, 2022, an Immigration Judge found that petitioner was removable "as charged" in the Notice to Appear and ordered petitioner removed from the United States to Vietnam.  (ECF No. 9-1 at 2; ECF No. 9-2 at 25-26.)  Petitioner waived his appellate rights. (ECF No. 9-1 at 2; ECF No. 9-2 at 25-26.)

///

///

///

2

On August 23, 2022, the United States government requested travel documents for petitioner to Vietnam.[2] (ECF No. 9-1 at 2.)  No travel documents were issued.

On or about November 2, 2022, petitioner was released from ICE custody and placed on an Order of Supervision ("OSUP"), pending removal.  (ECF No. 9-1 at 2; ECF No. 9-2 at 28-34.)  Conditions of his release included enrollment in Alternatives to Detention ("ATD") and other conditions, including restrictions on his travel and providing notice regarding his change in residence or employment.  (ECF No. 9-1 at 2; ECF No. 9-2 at 30.)  During his supervised release, Petitioner checked in weekly through a smartphone device, attended in-person visits, and participated in in-home visits.  (See ECF No. 17-1 at 2.)  While he was under supervision, petitioner maintained a full time job for two years, regularly visited his family after receiving approval to stay overnight with his family, and attended church weekly in San Jose.  (ECF No. 17-1 at 2.)

On or about May 28, 2025, petitioner completed an in-person visit at the ICE office in San Jose, and he was not informed of any violation of his supervision. (ECF No. 17-1 at 3.)  The day after this in-person office visit, petitioner received a text message from ICE instructing him to meet with an ICE officer on either June 3 or June 4, 2025.  (Id.)

On June 4, 2025, petitioner reported to ICE in San Jose as instructed, was taken into ICE custody, and housed at Otay Mesa Detention Center in San Diego, California.  (See ECF No. 17-1 at 3; ECF No. 9-1 at 3; ECF No. 9-2 at 43-46.)  The Notice of Revocation of Release, dated June 4, 2025, states that petitioner's release was revoked due to "changed circumstances" in petitioner's case.[3]  (ECF No. 14-1 at 2.)  The Notice of Revocation states that ICE determined that petitioner could be removed from the United States pursuant to the outstanding removal order

---

[2]  In November 2020, the United States and Vietnam signed a Memorandum of Understanding ("MOU") that created a process for deporting immigrants who entered the United States before 1995.  (ECF No. 9-1 at 2; ECF No. 9-2 at 36-41.)

[3]  The record also includes Form I-213, dated June 4, 2025, which states that petitioner reported to the San Jose ICE Unit for violating the terms of his ATD enrollment and Order of Supervision.  (ECF No. 9-2 at 44.)  Because petitioner's release was revoked due to changed circumstances, and not based on alleged ATD or supervision violations (ECF No. 14-1 at 2), this Court does not address the statement in Form I-213.

3

against petitioner.  (Id.)  The Notice of Revocation states, "On February 20, 2002, you were ordered removed to Vietnam by an authorized U.S. DHS/DOJ official and you are subject to an administratively final order of removal.  Your case is under current review by the Government of Vietnam for the issuance of a travel document."  (Id.)  The Notice of Revocation states that petitioner will promptly be afforded an informal interview at which time petitioner will be given an opportunity to respond to the reasons for the revocation.  (Id.)

On October 3, 2025, a Notice to Alien of File Custody Review was issued.  (Id. at 8-9.) This document states that "[i]f ICE has not removed [petitioner] from the United States within the removal period as set forth in INA 241(a) (normally 90 days of either: 1) [petitioner] entering ICE custody with a final order of removal, deportation or exclusion, or 2) the date of any final order [petitioner] receive[s] while in ICE custody), ICE's Deciding Official will review petitioner's case for consideration of release on an Order of Supervision."  (Id. at 8.)  The document states that petitioner's release is dependent on petitioner demonstrating to the satisfaction of the Attorney General that petitioner will not pose a danger to the community or a flight risk.  (Id.) The document states that petitioner's custody status will be reviewed on or about October 3, 2025 by a Deciding Official.  (Id.)  The record does not include any indication that the custody review occurred.[4]  (See ECF Nos. 9, 14, 17.)

On October 25, 2025, Enforcement and Removal Operations ("ERO") submitted a Travel Documentation Request for petitioner with the Vietnamese Consulate in Washington, D.C.  (ECF No. 9-1 at 3; ECF No. 9-2 at 48.)  The Vietnamese Consulate asked for additional documentation from ERO and on December 18, 2025, ERO submitted the required documents and updated its request.  (ECF No. 9-1 at 3.)  ERO is waiting for Vietnam to issue travel documents for petitioner before his removal can be scheduled.  (ECF No. 9-1 at 2.)

On or about December 9, 2025, petitioner was transferred from the Otay Detention Center in San Diego, California to the Golden State Annex in McFarland, California.  (ECF No. 9-1 at 3.)  On or around December 17, 2025, ICE officials attempted to conduct an interview with

---

[4]  More than 90 days have passed since petitioner was re-detained in June 2025, and more than 90 days have passed since the October 3, 2025 notice.

4

petitioner pursuant to 8 C.F.R. § 241.4(i)(3) for consideration by the HQ ICE ERO Removal Division for its decision on whether petitioner will remain in custody or be released. (ECF No. 14-1 at 10-12.) Petitioner refused to participate in this interview. (Id. at 10.)

In his declaration submitted in support of the reply, petitioner states that after being released from ICE custody in November or December 2022, petitioner went to the Vietnamese Consulate in San Francisco to apply for travel documentation. (ECF No. 17-at at 1.) When he submitted the application along with his birth certificate, the representative at the consulate tore petitioner's application into shreds and instructed petitioner to inform the agency that was wanting to deport petitioner to contact the consulate directly. (Id. at 1-2.) Sometime in July or August 2025, after being re-detained, petitioner was transferred to a detention center in Louisiana. (Id. at 3.) While in detention in Louisiana, ICE provided petitioner with an application for travel documentation, which petitioner completed and returned to ICE. (Id. at 3.) This was the second application that petitioner had filled out. (Id.) Sometime in October or November 2025, ICE asked petitioner to fill out the same application for travel documentation. (Id. at 4.) This was the third application petitioner filled out. (Id.) On or around December 20, 2025, during ICE's weekly visit to the detention center, petitioner asked an ICE agent for an update on petitioner's travel document. (Id.) The ICE agent told petitioner that it is still in the process and they might have petitioner re-do the paperwork, which meant that petitioner would have to prepare another application for travel documentation. (Id.)

## III. PROCEDURAL BACKGROUND

On December 8, 2025, petitioner filed his habeas corpus petition requesting immediate release. (ECF No. 1.) On December 11, 2025, this Court ordered respondents to file a response to petitioner's request for injunctive relief within seven days. (ECF No. 6.) This Court ordered that petitioner may file a reply to respondents' response within seven days after being served with respondents' response. (Id.) Instead of limiting its response to the request for injunctive relief, on December 18, 2025, respondents filed a return to the petition, addressing the petition on the merits. (ECF No. 9.) Because petitioner, represented by counsel, filed a reply to the government's return addressing the merits (ECF No. 14), the Court issues these findings and

5

recommendations on the petition's merits, rather than limited to a review of a request for preliminary injunctive relief.

On December 30, 2025, this Court granted petitioner's motion to appoint counsel and appointed the Office of the Federal Defender to represent petitioner. (ECF Nos. 3, 11.) This Court also found that respondents did not submit all relevant documents with their response. (Id.) Respondents were ordered to submit, by January 2, 2026, copies of documents related to any release or supervision violations; notices provided related to revocation of release; detention orders, including those related to petitioner's June 6, 2025 detention; and release orders that had not already been submitted to the court. (Id.) This Court further ordered that respondents could file an optional supplemental response with their submission limited to any additional documents. (Id.) Because the additional documents were not timely submitted, this Court issued another order requiring respondents to file the relevant documents and optional supplemental response, which was filed on January 6, 2026. (ECF Nos. 13, 14.)

On January 6, 2026, this Court confirmed that attorney Mohamad A. Baydoun was appointed to represent petitioner. (ECF No. 15.) On January 9, 2026, this Court granted petitioner ten days to file a reply to respondents' response. (ECF No. 16.) On January 17, 2026, petitioner filed a reply to respondents' response. (ECF No. 17.)

**IV.  PROPER RESPONDENTS**

In the response, respondents move to strike and dismiss all unlawfully named officials under 28 U.S.C. § 2241. (ECF No. 9 at 1 n. 1.) Citing Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004), respondents state that the proper respondent in habeas cases "is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." (Id.) Respondents state that at the time of filing, petitioner's custodian was the facility administrator of the Golden State Annex located in McFarland, California. (Id.) In habeas petitions filed pursuant to Section 2241 by immigrant detainees, the proper respondent is the warden of the detention facility where the petitioner is held. See Doe v. Garland, 109 F.4th 1188, 1197 (9th Cir. 2024). Accordingly, this Court recommends that the district court grant respondents' motion to dismiss all improperly named officials and to recognize the proper

6

respondent as the facility administrator of petitioner's detention facility, the Golden State Annex.

## V.  CLAIMS RAISED IN PETITION

The petition raises four claims for relief.  In claim one, petitioner argues that his continued detention violates his right to due process.  (ECF No. 1 at 13-14.)  In claim two, petitioner argues that ICE's current procedures for removal of detainees to third countries, to which petitioner is subject, violate the Fifth Amendment, the INA, the Convention Against Torture and implementing regulations.  (Id. at 14-15.)  In claim three, petitioner argues that punitive third country banishment violates the Eighth and Fifth Amendments.  (Id. at 15-16.)  In claim four, petitioner argues that ICE failed to follow its own policies when it re-detained petitioner.  (Id. at 17-18.)  The petition requests petitioner's immediate release.

Though respondents addressed petitioner's third country removal claims (claims two and three) in their return (ECF No. 9), petitioner did not respond to these arguments in his reply to the return, focusing instead on claims regarding his re-detention (ECF No. 17).  In an abundance of caution, this Court addresses the third country removal claims because it is not clear whether petitioner intended to abandon these claims.

## VI.  LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody."  Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention.  See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

///

7

## VII.  DISCUSSION

### A.  Claims One and Four

In claim one, petitioner argues that his continued detention in immigration custody pursuant to 8 U.S.C. 1231 violates the Due Process Clause of the Fifth Amendment because there is no significant likelihood that petitioner will be removed in the reasonably foreseeable future. (ECF No. 1 at 13.)  In claim four, petitioner argues that ICE detained him without following the regulations set forth in 8 C.F.R. § 241.13.  (Id. at 17-18.)  In the response to the petition, respondents argue that petitioner's continued detention under 8 U.S.C. § 1231 is lawful because petitioner has not met his burden of demonstrating there is no significant likelihood of removal in the reasonably foreseeable future pursuant to Zadvydas v. Davis, 533 U.S. 678 (2001).  (ECF No. 9 at 4.)  Respondents do not specifically address petitioner's claim that ICE failed to follow the regulations set forth in 8 C.F.R. § 241.13.

As discussed below, claims one and four are both based on ICE's alleged failure to follow its own regulations.  Accordingly, this Court discusses these claims together.

The authority of ICE to detain noncitizens under federal law derives from 8 U.S.C. § 1231, which directs the Attorney General of the United States to affect the removal of any noncitizen from this country within 90 days of any order of removal.  8 U.S.C. § 1231(a)(1).  However, where a noncitizen subject to a final order of removal has been released, revocation of that release is governed by 8 C.F.R. § 241.13(i).  See Zheng v. Albarran, 2025 WL 3640676, at *2 (E.D. Cal. Dec. 16, 2026) (citing Hoac v. Becerra, 2025 WL 1993771, at *3 (E.D. Cal. July 16, 2025)).  Specifically, a noncitizen's release may be revoked "if, on account of changed circumstances," it is determined that "there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future."  8 C.F.R. § 241.13(i)(2).  As stated above, the Notice of Revocation of Release dated June 4, 2025 states that petitioner's release was revoked due to "changed circumstances" because ICE determined that petitioner could be removed to Vietnam from the United States.  (ECF No. 14-1 at 2.)

Citing Zadvydas, respondents argue that petitioner has the initial burden to show that there is no significant likelihood of removal in the reasonably foreseeable future.  (ECF No. 9 at 4.)

8

Zadvydas dealt with a noncitizen who had been detained and never released following a final order of removal.  Zadvydas, 533 U.S. at 701.  In that context, the Supreme Court held that once a noncitizen has been detained for six months and "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with sufficient evidence to rebut that showing."  Id.

However, the burden-shifting framework from Zadvydas does not apply here.  As another district court noted in a similar context, "[t]his case is not about ICE's authority to detain in the first place upon an issuance of a final order of removal as in Zadvydas."  Nguyen v. Hyde, 788 F. Supp. 3d 144, 149 (D. Mass. 2025); see also Yan-Ling X. v. Lyons, 2025 WL 3123793, at *3 (E.D. Cal. Nov. 7, 2025).  As in Nguyen, "[t]his case is about ICE's authority to re-detain [petitioner] after he was issued a final order of removal, detained, and subsequently released on an [order of supervision]."  Nguyen, 788 F. Supp. 3d at 149.  "[T]his is not your typical first round detainment of an alien awaiting removal.  Petitioner was previously detained, then released on supervised release for several years, and his 90-day removal period expired."  Escalante v. Noem, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025).  Petitioner was ordered removed in August 2022, detained after this final order of removal, released on supervision in November 2022, and then re-detained in June 2025 and has been detained well beyond the expiration of the 90-day removal period.

The regulations at 8 C.F.R. § 241.13(i) apply to non-citizens in petitioner's situation.   In Escalante, the court noted that:

> Section 241.13(i)(2)[,] [which is] entitled "Revocation for removal[,]" provides that "the Service may revoke an alien's [supervised] release under this section and return the alien to custody if, on account of changed circumstances, *the Service determines* that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2) (emphasis added).   Section 241.4(b)(4)[,] which is entitled "*Service determination under* 8 C.F.R. 241.13[,]" states that, after supervised release under section 241.13, "*if the Service subsequently determines*, because of a change of circumstances, that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future [to the country to which the alien was ordered removed or] a third county, the alien shall again be subject to the custody review procedures under this section." 8 C.F.R. § 241.4(b)(4) (emphasis added).

9

Escalante, 2025 WL 2206113, at *3 (emphasis in original).

Those regulations indicate that when ICE revokes release to effectuate removal, "it is [ICE's] burden to show a significant likelihood that the alien may be removed." Escalante, 2025 WL 2206113, at *3; see also Roble v. Bondi, 2025 WL 2443453, at *4 (D. Minn. Aug. 25, 2025) ("[T]he regulations at issue in this case place the burden on ICE to first establish changed circumstances that make removal significantly likely in the reasonably foreseeable future."); Abuelhawa v. Noem, 2025 WL 2937692, at *8 (S.D. Tex. Oct. 16, 2025) ("[U]pon revocation of release, the Government bears the burden to show a significant likelihood that the alien may be removed in the reasonably foreseeable future."). As the district court in Escalante found, "[i]mposing the burden of proof on the alien each time he is re-detained would lead to an unjust result and serious due process implications." Escalante, 2025 WL 2206113, at *3. Therefore, the Court must determine whether respondents have met their burden to show a changed circumstance indicating a significant likelihood of removal.

The only changed circumstance that respondents identify in petitioner's case is that ICE is in the process of providing all of the necessary information and documentation to the Vietnamese Consulate so that Vietnam can issue travel documents. (ECF No. 9 at 4.) In the ICE Officer's declaration submitted in support of the government's response, the ICE Officer states that "[o]n October 25, 2025, ERO submitted a Travel Documentation Request for petitioner with the Vietnamese Consulate… The Vietnamese Consulate asked for additional documentation from ERO and on December 18, 2025, ERO submitted the required documents and updated its request." (ECF No. 9-1 at 3.)

Respondents fail to explain why a travel document from Vietnam was not previously obtained in 2022, or why Vietnam is likely to issue a travel document for petitioner in the reasonably foreseeable future. See Yan-Ling, 2025 WL 3123793, at *4 (citing Hoac v. Becerra, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) ("Respondents have not provided any details about why a travel document could not be obtained in the past, nor have they attempted to show why obtaining a travel document is more likely this time around."). Respondents do not explain whether removals to Vietnam are common, do not identify what considerations the Government

of Vietnam might take into account when deciding whether to issue a travel document, and do not explain whether the Government of Vietnam will look favorably on petitioner's case. See Yang-Ling, 2025 WL 3123793, at *3 (citing Liu v. Carter, 2025 WL 1696526, at *2 (D. Kan. June 17, 2025) (finding that the respondents had not shown that removal was reasonably foreseeable where they did not provide evidence why seeking travel documentation was more likely to be successful this time around or describe other actions taken to make the petitioner's removal more likely)). The phrase "significant likelihood" requires something more than a mere possibility that removal will occur. Evidence that "there is at least some possibility" that the designated country of removal "will accept Petitioner at some point…is not the same as a significant likelihood that he will be accepted in the reasonably foreseeable future." Nguyen v. Scott, 796 F. Supp. 3d 703, 725 (W.D. Wash. 2025).

In the instant case, petitioner was ordered removed to Vietnam in August 2022. Respondents do not explain why ICE has been unable to remove petitioner for approximately three and one-half years since his final order of removal issued, but ICE was unable to obtain travel documents for petitioner and it appears his removal was otherwise not practicable. "An undue delay in removal for an individual alien beyond the typical removal period would naturally suggest that removal is unlikely." Chun Yat Ma v. Asher, 2012 WL 1432229, at *5 (W.D. Wash. Apr. 25, 2012).

Re-detention is permissible only if ICE can show there is a significant likelihood of removal in the reasonably foreseeable future (or if there was a violation of the order of supervision which respondents do not allege here). See 8 C.F.R. § 241.13(i). ICE re-detained petitioner on June 4, 2025 without making that showing and without complying with its own regulations. "ICE, like any agency, 'has the duty to follow its own regulations.'" Rombot v. Souza, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (quoting Haoud v. Ashcroft, 350 F.3d 201, 205 (1st Cir. 2003); see Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons, 954 F.3d 118, 130 (2d Cir. 2020) ("[U]nder deeply rooted principles of administrative law, not to mention common sense, government agencies are generally required to follow their own regulations."); United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 265–68 (1954).

11

This Court also observes that Section 241.13(i)(2) requires that the determination that changed circumstances will result in the noncitizen's removal in the reasonably foreseeable future is made *before* the removable noncitizen has had their release revoked.  See Duong v. Charles, 2025 WL 3187313, at *3 (E.D. Cal. Nov. 14, 2025); Tran v. Noem, 2025 WL 3005347, at *2 (S.D. Cal. Oct. 27, 2025); Sphabmixay v. Noem; 2025 WL 3034071, at *2 (S.D. Cal. Oct. 3, 2025).  Here, the record does not show that a changed-circumstance determination was made at or before petitioner's re-detention on June 4, 2025.  Instead, the record shows that the government did not submit a request to Vietnam for travel documents until October 25, 2025—almost five months after re-detaining petitioner.  To the extent the changed circumstance could be based on the travel documents requested after petitioner's re-detention, petitioner's re-detention violates § 241.13(i)(2) because a changed-circumstance determination was not made at or before petitioner's re-detention on June 4, 2025.

In addition, the Notice of Revocation of Release, dated June 4, 2025, was not accurate. The Notice of Revocation states, "Your case is under current review by the Government of Vietnam for the issuance of a travel document."  (ECF No. 14-1 at 2.)  This statement is not accurate because at the time of petitioner's re-detention on June 4, 2025, the government had not yet requested travel documents from Vietnam.  The government did not request travel documents from Vietnam until almost five months later on October 25, 2025.  (See ECF No. 9-1 at 3.)  When revoking petitioner's release pursuant to § 241.13(i)(2) based on changed circumstances, the petitioner "must be told *what* circumstances had changed or *why* there was not a significant likelihood of removal in order to meaningfully respond to the reasons and submit evidence in opposition."  Sarail v. Bondi, --- F.  Supp. 3d ----,  2025 WL 2533673, at *10 (D. Minn. 2025). By stating "changed circumstances" without any other information and then incorrectly stating that the government had requested travel documents from Vietnam for petitioner, the Notice of Revocation gave neither adequate nor accurate notice to petitioner of the reasons for the revocation of his release.[5]

---

[5]  The Court also notes that the Notice of Revocation identifies February 20, 2022 as the date of

This Court also observes that the record contains no evidence that petitioner received an initial informal interview promptly following his re-detention as required by 8 C.F.R. § 241.13(i)(3):

> (3) Revocation procedures. Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

8 C.F.R. § 241.13(i)(3).  The Notice of Revocation also repeated these requirements regarding the prompt provision of an informal interview where petitioner would "be given an opportunity to respond to the reasons for the revocation."  (ECF No. 14-1 at 2.)

In his declaration submitted in support of the reply, petitioner states that when he was arrested on June 4, 2025, the ICE officer told petitioner that the ICE officer did not know why petitioner was being arrested.  (ECF No. 17-1 at 3.)  Petitioner states that since being detained on June 4, 2025, petitioner has not been provided with the reason for his re-detention.  (Id.)  While ICE officials sought to interview petitioner on December 17, 2025, this interview was conducted pursuant to 8 C.F.R. § 241.4(i)(3), which concerns the continued detention of inadmissible, criminal aliens and other aliens beyond the removal period.   See 8 C.F.R. § 241.4; ECF No. 14-1 at 10-12.  The attempted interview of petitioner by ICE officials in December 2025 was not the initial informal interview required by 8 C.F.R. § 241.13(i)(3) when petitioner was re-detained on June 4, 2025.

Courts have held that "where an immigration 'regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute ... and [ICE] fails to adhere to it, the challenged [action] is invalid.'"  Rombot, 296 F. Supp. 3d at 388 (quoting Waldron v.

the removal order, which is incorrect; petitioner was ordered removed on August 4, 2022. (Compare ECF No. 9-1 at 2, 9-2 at 25-26, with ECF No. 14-1 at 2.)

13

I.N.S., 17 F.3d 511, 518 (2d Cir. 1993)); see also Truong v. Noem, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 6, 2025) ("Courts have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered.") (collecting cases).

The Court analyzes petitioner's due process claim "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Garcia v. Andrews, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)). When the government grants a noncitizen parole or supervised release, it creates a protected liberty interest subject to due process clause protection. See Sanchez v. LaRose, 2025 WL 2770629 (S.D. Cal. Sept. 26, 2025). These protections include at least notice and an opportunity to be heard regarding the revocation. Id.; Mathews v. Eldridge, 424 U.S. 319, 348 (1976) ("The essence of due process is the requirement that 'a person in jeopardy of a serious loss [be given] notice of the case against him and the opportunity to meet it."). In Saengphet v. Noem, the district court ruled that notices revoking protected liberty interests are constitutionally inadequate when they lack individualized explanations of the changed circumstances giving rise to revocation. 2025 WL 3240808, at *5 (S.D. Cal. Nov. 20, 2025). Constitutionally inadequate notice also often leads to constitutionally inadequate opportunity to be heard, because opportunity to be heard must be meaningful to be constitutionally sufficient. See Sanchez, 2025 WL 2770629 at *3; Ying Fong v. Ashcroft, 317 F. Supp. 2d 398, 403 (S.D.N.Y. 2004) ("The opportunity to be heard must be meaningful, that is, an opportunity granted at a meaningful time and in a meaningful manner."). A detainee's opportunity to be heard is not meaningful if the detainee has not been informed of the circumstances of his revoked release in a manner sufficient to allow his response. Sarail A. v. Bondi, 2025 WL 2533673, at *10 (D. Minn. Sept. 3, 2025). While this Court recognizes that the government has an interest in enforcing immigration laws, the government's interest in re-detaining petitioner without adequate notice and an opportunity to challenge the revocation of his release is low. See Ortega v. Bonnar, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d

14

1083, 1094 (E.D. Cal. March 3, 2025).  "That the Government may believe it has a valid reason to detain petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process."  E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025).  Respondents identify no reason why adequate notice and an informal interview "to afford the alien an opportunity to respond to the reasons for revocation stated in the notification" was not provided to petitioner as required by their own regulations.  See 8 C.F.R. § 241.13(i)(3).  As discussed above, petitioner was released under an order of supervision in November 2022, re-detained on June 4, 2025, and issued a Notice of Revocation of Release that stated "changed circumstances" as the reason for revocation and was materially not accurate .

For the reasons above, this Court recommends that the petition be granted as to claims one and four alleging that petitioner's re-detention is unlawful because the government failed to demonstrate a significant likelihood of petitioner's removal to Vietnam in the reasonably foreseeable future, because the government failed to comply with its own regulations regarding the revocation of petitioner's release set forth at 8 C.F.R. § 241.13(i).[6]

**B.  Claims Two and Three**

In claim two, petitioner argues that ICE's current procedures for removal of detainees to third countries, to which petitioner is subject, violate the Fifth Amendment, the INA, the Convention Against Torture and implementing regulations.  (ECF No. 1 at 14-15.)  In claim three, petitioner argues that punitive third country banishment violates the Eighth and Fifth Amendments.  (Id. at 15-16.)

Respondents argue that to the extent petitioner's third country removal claims seek to enjoin the decision to execute his removal order, these claims are jurisdictionally barred under 8 U.S.C. § 1252(g).  (ECF No. 9 at 5.)  Section 1252(g) states that, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or

---

[6]  Petitioner is subject to a final order of removal, which he has not appealed, and the Court recognizes that the underlying criminal convictions for which petitioner is subject to removal are serious.  (See ECF No. 9-2 at 7-13, 25-26.)  The government may revoke petitioner's supervision and remove petitioner, but must do so lawfully, following the requirements of the Constitution and its own regulations.  It has failed to do so here.

action by the Attorney General to commence proceedings, adjudicate cases or execute removal orders against any alien under this chapter." 12 U.S.C. § 1252(g).

Numerous courts in the Ninth Circuit have addressed this same jurisdictional argument and have found that while it is not within a district court's jurisdiction to enjoin the government's execution of a lawful removal order, it is within the court's jurisdiction to prevent removal absent statutory and constitutional due process requirements. See Y.T.D. v. Andrews, 2025 WL 2675760, at *5 (E.D. Cal. Sep. 18, 2025) (concluding the court "has habeas jurisdiction over the issues raised here, namely the lawfulness of his continued detention and the process required in relation to third-country removal," notwithstanding § 1252(g)) (citing Jennings v. Rodriguez, 583 U.S. 282, 294 (2018)); Ortega v. Kaiser, 2025 WL 2243616, at *3 (N.D. Cal. Aug. 6, 2025) (holding that § 1252 did not apply because petitioner "does not challenge the execution of the final removal order entered against him, which provided for his removal only to El Salvador and deferred his removal there in light of his [Convention Against Torture] claim;" rather, petitioner "challenges his potential detention or removal to a country other than El Salvador, for which there currently exists no final removal order. Accordingly, his claims do not challenge the Government's 'decision or action …to…execute removal orders,' and Section 1252(g) does not bar the Court's review of his claims."); Aden v. Nielsen, 409 F. Supp. 3d 998, 1006 (W.D. Wash. 2019) ("Petitioner does not challenge the [Immigration Judge ("IJ")'s] determination that he is removable or claim any deficiency in the removal order itself. Rather, he challenges DHS's attempts, outside of removal proceedings, to designate Somalia without reopening its proceeding so that an IJ could make the designation in the first instance and/or determine whether petitioner's life or freedom would be threatened in that country."). Accordingly, this Court finds that petitioner's claims challenging third country removal are not jurisdictionally barred under 8 U.S.C. § 1252(g). See also A.A.M. v. Andrews, 2025 WL 3485219, at *5-6 (E.D. Cal. Dec. 4, 2025).

Respondents argue that petitioner lacks standing to raise his third country removal claims because there is no indication that respondents intend to remove petitioner to a third country. (ECF No. 9 at 4.) To establish Article III standing, a party must allege an injury that is "concrete

and particularized," "actual or imminent," and likely to be "redressed by a favorable" judicial decision. Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992). This Court observes that the petition was filed while petitioner was still proceeding pro se and appears to be a form petition, and the record before the court does not include any documents that indicate third country removal is at issue. (See ECF No. 1; ECF Nos. 9-2, 14-1, 17, 17-1.) As stated above, in the reply to respondents' response and petitioner's own declaration, petitioner does not address the third party removal claims. Because nothing before the Court shows any basis for petitioner's third country removal claims, this Court finds that petitioner lacks standing to raise his third party removal claims at this time.

### C. Remedy

Based on the recommendation that the petition be granted as to claims one and four, this Court recommends that petitioner be immediately released to return him to the status quo before the pending controversy. See Yang v. Kaiser, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante is "the last uncontested status which preceded the pending controversy."). Because petitioner challenges his current re-detention, the last uncontested status of petitioner was his release under the November 2, 2022 order of supervision before his re-detention in June 2025.

## VIII.  CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1.  The district court grant respondents' request to dismiss all improperly named officials as respondents and find the sole proper respondent is the Facility Administrator of Golden State Annex Facility.

2.  The petition for writ of habeas corpus be granted as to claims one and four.

3.  Petitioner be immediately released from ICE custody under the same conditions he was previously released in his November 2, 2022 order of supervision. Respondents be enjoined and restrained from re-detaining petitioner absent compliance with constitutional protections, which include, at a minimum, compliance with the requirements of 8 C.F.R. § 241.13(i) for revocation.

4.  Within **seven days** of the adoption of these findings and recommendations, the parties

17

be ordered to file a joint status report addressing petitioner's status.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** of the date of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within **seven** days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  January 21, 2026

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

Duon1771.inj(2)/2

18